[No. 1281, August 29, 1910.]

TERRITORY OF NEW MEXICO, Appellant, v. EASTERN RAILWAY OF NEW MEXICO, Appellee.

SYLLABUS (BY THE COURT.)

1. The defendant, the Eastern Railway Company of New Mexico, was the owner by purchase, from the Pecos Valley & Northeastern Railway Company, of a railroad about two hundred and twenty miles in length, extending from a point on the southern boundary line between New Mexico and Texas, northeasterly to a point in the town of Texico, at or near the easterly boundary line between New Mexico and Texas and, by construction, a railroad extending from Rio Puerco station on the Santa Fe Pacific railroad, in Valencia County, easterly to a connection in Texico with the purchased railroad at its terminus there. It built a branch road from Clovis, on the railroad it had constructed a few miles west from Texico, to a point near the station of Cameo, on the first named road which point is also a few miles west from Texico, began running all trains to and from

Territory v. Eastern Railway.

Texico which had theretofore been run over the Pecos Valley and Northeastern railroad, over said branch road and by way of Clovis, over, the portion of said constructed railroad between Clovis and Texico, and abandoned the portion of the first named railroad between Texico and the point near Cameo where the branch road connected. The distance from Texico to the last named point is thirteen and two-tenths miles, and between the same points by way of Clovis is nineteen miles. Held, that the change was within the statutory authority of sub-sec. 17, sec. 3847, C. L. 1897.

2. The directors of the defendant company did not take action to authorize the change specified in the preceding paragraph until after the change had been made and after suit was brought to prevent its consummation but did take such action before trial. Held, that the state of facts at the time of judgment and not that at the institution of the suit furnished the proper basis for the action of the trial court.

Appeal from the District Court for Chaves County before WILLIAM H. POPE, Chief Juctice. Affirmed.

FRANK W. CLANCY, Attorney General, for Appellant.

Without statutory authority, a railroad company cannot lawfully change its line. Brown v. Railroad Co., 126 Ga. 251 and cases cited; Railway Co. v. Woodyard, 226 Ill. 335; Lusby v. Railroad Co., 73 Miss. 368; State v. Railroad Co., 86 Miss. 196; Railway Co. v. Kirkland, 129 Ga. 557; Leverett v. Railway Co., 96 Ga. 389; Railroad Co. v. Maylor, 2 Ohio St. 239; Moorhead v. R. R. Co., 17 Ohio, 351-2; Railroad Co. v. Railroad Co., 31 N. J. L. 208.

HENRY L. WALDO of Counsel, R. E. TWITCHELL and W. C. REID for Appellee.

Where a railroad company has built its road without resorting to the power of eminent domain and is able to acquire a new right of way by purchase or otherwise, without condemnation, it has authority to make any changes

in its route that do not interfere with the rights of the public. Elliott on Railroads, 2 ed., secs. 930, 931; C. L. 1897, sec. 3838, sub-section 17; Laws of 1907, chapter 27; Mine Hill Railroad Company v. Lippincott, 86 Pa. St. 468; Dewey v. Atlantic Coast Line, 142 N. C. 392, 56 S. E. 292; Chicago St. Ry. Co. v. People, 222 Ill. 396, 78 N. E. 784; M. J. & K. C. Ry. Co. v. State, Miss., 122 Am. St. R. 295, affirmed 210 U. S. 187; Chicago & N. W. Ry. Co. v. State, 103 N. W. 1087; State v. Republican Valley R. R. Co., 17 Neb. 647, 24 N. W. 329, 52 Am. Rep. 424; People v. C. & A. R. R. Co., 130 Ill. 175, 22 N. E. 857; State v. Des Moines and Kansas City Ry. Co., 87 Ia. 644, 54 N. W. 461; A., T. & S. F. Ry. Co. v. D. & N. O. Ry. Co., 110 U. S. 682; State v. Dodge City M. & K. T. R. Co., 36 St. Rep. Kan. 747; 36 Kan. St. Rep. 755, 24 I. R. A. 564; City of Potwin v. Topeka St. Ry. Co., 51 Kans. 609; Jones v. Newport News & M. V. Co., 65 Fed. Rep. 736; The People, Respondent v. The Rome, Watertown & Ogdensburgh R. R. Co., 103 N. Y. 96; Atlantic, etc., R. R. Co. v. St. Louis, 66 Mo. 228; Northern Pacific R. R. Co. v. Dustin, 142 U. S. 419; Chicago & E. R. R. Co. v. People, 78 N. E. 784; Fullen v. Dame, 8 Pickering 472; Texas & Pacific Ry. Co. v. Marshal, 136 U. S. 395; San Antonio St. Ry. Co. v. State, 90 Texas 520, 59 Am. St. Rep. 834.

Whilst serving the public, no corporation or private person is obliged to continue the service without a reasonable remuneration. Smyth v. Ames, 169 U. S. 467; Chicago M. & St. P. R. R. Co. v. Minn., 134 U. S. 418; R. R. Co v. Sanford, 164 U. S. 578; Railway Co. v. Smity, 173 U. S. 684; Royal Trust Co. v. Washburn, B. & I. Ry. Co., 113 Fed. 531; Mercantile Trust Co. v. Columbus, S. & H. R. R. Co., 90 Fed. 149; Railroad Co. v. Dustin, 142 U. S. 499; Railroad Co. v. Hall, 91 U. S. 343; Railway Co. v. The Queen, I. El. & Bl. 858, 874; Com. v. Fitchburg R. Co., 12 Gray 180; State v. Southern Minn. Ry. Co., 18 Minn. 40; Coe v. Columbus P. &. I. R. R., 75 Am. Rep. St. 524; Honolulu Rapid Transit and Land Co. v. Ty. of Hawaii, 211 U. S. 282, 29 Sup. Ct. Rep. 55; Northern Pac. Ry. Co. v. Washington Ty., 142 U. S. 492.

The court below has made findings of facts and this court will not disturb such findings if there is any evidence to sustain the same. Romero v. Coleman, 11 N. M. 533; Gerrell v. Barnett, 9 N. M. 254; Waldo v. Beckwith, 1 N. M. 97; Badeau v. Baca, 2 N. M. 194; Territory v. Webb, 2 N. M. 147; Territory v. Maxwell, 2 N. M. 250; Lynch v. Grayson, 7 N. M. 26.

### STATEMENT OF THE CASE.

In this cause we have to determine whether the plaintiff, the Territory of New Mexico, here the appellant, is entitled to appropriate action by the District Court in which the cause originated to prevent the disuse and abandonment by the defendant of the portion of its road between the town of Texico and a point at or near the station of Cameo. The portion of the road thus in question is a part of what was the railroad of the Pecos Valley and Northeastern Railway Company which constructed it and ran trains over it regularly for about ten years up to March, 1907, when the defendant became the owner by purchase under the statutory authority of sec. 3921, C. L. 1897.

The defendent at the time of this purchase was engaged in constructing, in accordance with the law of the Territory, a railroad of approximately the same length as the purchased road, from Rio Puerco station on the Santa Fe Pacific railroad in Valencia county, easterly to the station of Texico, at a point at or near the eastern boundary of New Mexico, the same point to which the railroad it had purchased extended. It completed said construction and later in 1908, after filing notice of its intention so to do as required by law, built a branch road from the town of Clovis, on the railroad it had constructed, to a point near the station of Cameo, above named, on the railroad it had purchased, began running the trains which had theretofore run wholly over the latter railroad, to and from Texico by way of Clovis using said branch road to make the connection between the two main railroads, and had begun to take up its tracks between Texico and Cameo when this suit was brought to prevent such action.

The distance from the end of the branch railroad near

Cameo to the terminal point of the Pecos Valley and Northeastern railroad at Texico is thirteen and two-tenths miles. The distance between the same points by way of Clovis is nineteen miles.

The railroad for the entire distance each way is the property of the defendant.

The defendant claims that it had the right alike by the common law and the statutes of New Mexico to make the change in question. The Territory takes issue with the defendant on both branches of this claim.

The District Court found against the Territory on grounds stated in an exhaustive opinion by Judge Pope who tried the case without a jury, which the attorney general declares in his brief for the Territory "disposes of the questions involved as to the injurious effect upon the interests of the people of Texico or of the public generally," and that "it is now intended to discuss only the lawful authority and power of the defendant to abandon a portion of its purchased road and incidentally to consider the mischievous consequences of declaring such a power to exist."

### OPINION OF THE COURT.

ABBOTT, J.—It is suggested at the outset for the Territory that by abandoning the portion of road in question the defendant would in effect violate the provisions of Section 3921, which requires a railroad purchased under its authority "to form a connected line with the railroad of the purchasing company either by direct connection therewith or through an intermediate line or lines constructed or to be constructed" and owned or controlled by the purchasing company.

By means of the branch line which the defendant constructed the Pecos Valley and Northeastern railroad is still a "connected line" with the railroad constructed by the defendant from Rio Puerco to Texico, the point of connection now being Clovis instead of Texico, as it was before the change.

The attorney general also calls attention to the fact, as he states it to be, that the directors of the defendant

company did not take the action by which they seek to bring the change within the authority of sub-div. 17, sec. 3847, C. L. 1897, until April 20, 1908, which was after the construction of the branch road by means of which the change was really effected.

The facts are, apparently, even more decidedly that way than he claims. While the record, page 240, gives the date of the meeting as Thursday, April 20, 1908, at which the resolution of the directors, referred to, was adopted, the resolution itself contains a statement of what had been done in the latter part of May, 1908, and besides, April 20, 1908, did not fall on Thursday.

Counsel for the defendant state in their brief that the action of the directors was taken not only after the construction of the branch road, but after the beginning of this suit, which was entered July 13, 1908, and as August 20, 1908, fell on Thursday while July 20, did not, we conclude that April 20, in the record was probably a misprint for August 20.

Still, the action of the directors although tardy, and very likely due to the institution of· the suit, served the purpose which was probably contemplated by the statute, of making the change definitely and unquestionably the act of the corporation, and not that of unknown and perhaps unauthorized officials of the company. In such a case we must deal with the facts as they were at the time of judgment and not as they were at the beginning of the suit. Northern Pacific Railroad Co. v. Dustin, 142 U. S. 419.

We come now to the direct question whether such a change as that under consideration is within the authority of sub-div. 17, of sec. 3847, C. L. 1897, which is as follows:

"To change the line of its road, in whole or in part, whenever a majority of its directors may so determine: *Provided,* No such change shall vary the general route of such road, as described in its articles of incorporation. The land required for such new line may be acquired by contract with the owners thereof, or by condemnation, as provided in this act, as in the case of the original line."

The language used could not well have been made broader than it is.

By the description in the articles of incorporation of the Pecos Valley and Northeastern Railway Company; its railroad runs from a point in Eddy County, on the south line of the Territory, northerly and northeasterly to a point on the boundary line between New Mexico and Texas near the southwest corner of Parmer County, Texas, a distance of about two hundred and twenty miles.

Certainly it cannot be considered that a change by which an addition to the length of this line of only five and eight-tenths miles, the termini remaining the same, is a "variation of the general route." A change as great as that or greater might have been found necessary to avoid heavy grades or danger from floods.

It is further suggested for the Territory that what it complains of is not a change but an abandonment of a portion of the defendant's road. But the word "change" certainly, as used in the statute, implies the substitution of one thing for another, the giving up of all or a part of a line of road and the provision of other railroad in lieu thereof. If no abandonment was contemplated the word used should have been "addition" instead of "change."

We have examined the decisions cited by the attorney general but find none which stand against express statute permission to railroad companies to make changes in the location of their lines.

We quite agree with the attorney general that the power given by the statute is broad to a degree which may prove harmful to the public, especially that feature of it by which the Territory abdicates, in favor of the existing railroad corporations, the high right of eminent domain over a large but indefinite portion of the land within the Territory; but the remedy is to be found in legislation and not in any stretching of the authority of the courts to make instead of declare the law.

But it is no doubt true that, in general, the interest of a railroad company co-incided with the public interest as to any change it may wish to make in the line of its road. It will, as a rule, go to the expense of changes only

for the purpose of increasing its traffic or improving its facilities for handling traffic.

The danger referred to is further diminished by the fact· that in some cases of attempted change it might appear that the change proposed would be so clearly and strongly against the public interest or that the moving corporation would be so bound by contractual obligations, express or implied, to maintain and operate the road it proposed to abandon that the courts would be justified in giving any relief at their command against the railroad company purposing to make the change.

We are many years removed from the time when a celebrated railroad magnate of New York, not now living, made the defiant utterance toward the public which became more celebrated than himself, and we are all, including especially the managers of railroads, still further removed from that period in our way of looking at the subject.

The brief for the defendant well illustrates that change, alike in argument and citation.

In the first section of Elliott on Railroads, several times cited by the defendant with approval, at the threshold of their discussion of the subject, and as a necessary preliminary to it, the authors declare "they are given certain prerogative franchises and privileges for public purposes in return for which the state retains a right of supervision and control in excess of that exercised over purely private corporations. In the very grant of the franchise there is, in effect, an implied condition that it shall be held as a public or *quasi* public trust."

The same view is found in the decision cited for the defendant so far as they touch on that point and indeed it is no longer questioned.

But in the case at bar· it seems very clear from the record that there was practically no traffic to or from the portion of road abandoned and that there will result from the change a very decided balance of gain over loss for the public interest.

Even the injury which· Texico may have suffered is not, apparently the result of the disuse and abandonment of that particular portion of road in question since, as

appears, there is no complaint that the same trains as before are not run to and from it, but, intsead, from the establishment by the defendant of the facilities for carrying on its business at Clovis instead of at Texico.

Even if the court should grant the relief prayed for by the Territory in its entirety, namely, the restoration to its former use of the abandoned portion of road, that would not, necessarily or even probably, take away from Clovis or give to Texico any of those advantages which the former town seems to have gained from its location.

The language of the court in People v. Rome, K. & O. R. Co., 103 N. Y. 96, quoted by Judge Pope in his opinion above referred to well applies in this case.

"We do not determine that in all cases, where a railroad company which by consolidation has become the owner of two lines of road, between two termini, and running through different sections of country, and different cities or villages, like the two lines between Syracuse and Rochester, could abandon either of its lines, because in such cases it might well be that the public interest, and the accommodation of a large portion of the people of the state, required that both lines should be operated but that where a railroad company owns, by consolidation, two lines of road, and can substantially accommodate the people of the state by operating one line between the same points, and can abandon the other line without serious detriment to any considerable number of people, we do not believe that it should be compelled by mandamus to operate both lines at a great sacrifice of money, upon the fanciful idea that the sovereignty of the state is wounded by its omission to operate both lines."

With the view we take of the rights of the defendant under the statutes of New Mexico, it is unnecessary for us to determine what are its rights at common law.

The judgment of the District Court is affirmed.